UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>PAIGE A. THOMPSON,<br><br>Defendant. | NO. MJ19-0344<br><br>**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION** |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Andrew C. Friedman and Steven T. Masada, Assistant United States Attorneys for said District, files this memorandum in support of its motion to detain Defendant Paige A. Thompson pending resolution of this criminal matter.

## I.     INTRODUCTION

On July 29, 2019, Defendant Paige A. Thompson, also known by the online alias "erratic," was arrested based on evidence that she had hacked into servers rented or contracted by Capital One Financial Corporation ("Capital One") from a cloud computing company.  The same day, she made her initial appearance in this Court, charged by complaint with Computer Fraud and Abuse, in violation of Title 18, United

MEMORANDUM IN SUPPORT OF DETENTION - 1
*United States v. Paige A. Thompson*, No. MJ19-0344

States Code, Section 1030(a)(2).  The United States filed a motion for pretrial detention. That hearing, at the defense's request, was continued until August 15, 2019.

The government understands that the United States Probation and Pretrial Services Office ("Pretrial Services") is recommending that Thompson be detained.  The government agrees with this recommendation.  Thompson has a long history of threatening behavior that includes repeated threats to kill others, to kill herself, and to commit suicide by cop.  Thompson's threats have resulted in multiple calls to law enforcement, and the entry of protection orders against Thompson.  Thompson's crime in this case – major cyber intrusions that resulted in the theft of massive amounts of data from what now appears to be more than 30 victim companies – only exacerbates the harm that Thompson has done, and the threat she would pose if released.  As a result, the Court should order Thompson detained, both as a danger to the community, and as a risk of non-appearance.

## II.     BACKGROUND

### A. Thompson's Background

Thompson has a long history of threatening and violent behavior – including threats to kill others and herself, and to commit suicide by cop – that has resulted in multiple calls to law enforcement, and the entry of protection orders against Thompson.

- In October 2018, two individuals, a couple, sought protection orders against Thompson.  As set forth in a police report and their petitions, attached as Exhibits 1, 2, and 3, Thompson harassed and stalked the couple over the course of seven years (from 2011 through 2018).  The harassment, which included leaving notes and personal items at the petitioners' residence, repeatedly contacting them through social media (including through newly-created accounts after the victims blocked earlier accounts), and sending what the victims felt were threatening text messages and emails, was so severe that it contributed to the couple moving.  The King County District Court entered protection orders, attached as Exhibit 4 and 5, in favor of both the wife and husband, each for a term of *five* years, with the possibility of renewal for an additional term.

MEMORANDUM IN SUPPORT OF DETENTION - 2
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

■ In March 2019, police were called to Thompson's residence after Thompson became violent with her housemates.  According to the police report, attached as Exhibit 6, Thompson had become agitated. When a housemate tried to intervene, Thompson tried to strike the housemate.  Notably, Thompson's housemates reported that Thompson had threatened to retrieve a fake gun in the house and use it to commit "suicide by cop."  Thompson's housemates also stated that Thompson had a history during the entire time that she lived at the house of getting "incredibly angry at a moment's notice and becom[ing] destructive to property and assaultive" to others.

■ And, perhaps most concerning, in May 2019, police were called to Thompson's residence after Thompson contacted an acquaintance at a California technology office, and threatened to travel to the company's campus in California and to "shoot up" the office.  According to the police report, attached as Exhibit 7, Thompson made this threat in a string of messages that concerned the friend enough that he reported it to the police.  Significantly, at the time that she made this threat, Thompson had access to the weapons to commit such an act through her housemate – namely, the arsenal of assault rifles and other guns of her roommate, Park Quan (discussed further below).

Thompson's threats have continued, on social media in recent months.  For example, in June 2019, Thompson conveyed her readiness to "check the f-ck out," and said that she had "nothing to lose," but that she was "taking [her] time to pick off a few that deserve to go down":

1
2



3
4
5
6
7
8
9
10
11
12
13
14
15
16

17  Thompson also recently has threatened people who call law enforcement about her, as

18  well as threatened to kill officers who respond to such calls:

19

20



21
22
23
24
25
26

27      In addition to this history of threats – and, perhaps, explaining in part the threats –

28  Thompson appears to have significant mental-health issues.  According to one of the

MEMORANDUM IN SUPPORT OF DETENTION - 4
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

victims of Thompson's harassment, Thompson has longstanding mental-health issues. *See* Exhibit 1.  Indeed, Thompson herself has told others that she takes psychiatric medications.  *See* Exhibit 7.

Thompson also has been unemployed since 2016, has no known employment prospects if released, and, according to Thompson's housemates, is not welcome back at her residence.

**B. Thompson's Crime**

**1.  Thompson's Theft of Capital One's Data**

Thompson is charged with committing a massive data theft.  Thompson was arrested for, and currently is charged with, intruding into servers rented or contracted by Capital One, and with stealing huge volumes of data from those servers.  According to Capital One, Thompson stole information in credit card applications of approximately 106 million people.  Although some of the information (such as most Social Security numbers) was encrypted, other information, such as applicants' names, addresses, dates of birth, and information about their credit history was not encrypted.  Moreover, the data included unencrypted Social Security Numbers and bank account numbers for smaller numbers of customers (estimated at 120,000 of the former, and 77,000 of the latter, as of the date of Thompson's arrest).

The evidence that Thompson committed this crime is overwhelming.  It includes forensic evidence linking Thompson to the data theft, which resulted in this Court's issuance of a warrant to search Thompson's residence.  It includes the fact that the government recovered data stolen from Capital One on a server recovered from Thompson's bedroom.  And, it includes the fact that Thompson admitted to agents on the morning of the search that she had committed this intrusion.

Thompson's crime has done massive harm to Capital One.  Capital One already is the subject of 40 lawsuits in the United States, and eight more lawsuits in Canada. Capital One has announced that it expects the incident to result in costs of between $100 and 150 million in 2019.  *See* https://www.wsj.com/articles/capital-one-reports-data-

1  breach-11564443355 (dated July 30, 2019).  (According to some estimates, the company

2  might ultimately face significantly more exposure.  *See, e.g.*,

3  https://fortune.com/2019/07/31/capital-one-data-breach-2019-paige-thompson-settlement

4  (dated July 31, 2019) (estimating costs of up to $500 million).)  And, the company's

5  stock price has dropped approximately 10% since the breach was announced, erasing

6  billions of dollars from the company's market capitalization.

### 2.  Thompson's Theft of Other Company's Data

8       The government's investigation over the last two weeks has revealed that

9  Thompson's theft of Capital One's data was only one part of her criminal conduct.  The

10  servers seized from Thompson's bedroom during the search of Thompson's residence,

11  include not only data stolen from Capital One, but also multiple terabytes of data stolen

12  by Thompson from more than 30 other companies, educational institutions, and other

13  entities.  That data varies significantly in both type and amount.  For example, much of

14  the data appears not to be data containing personal identifying information.  At this point,

15  however, the government is continuing to work to identify specific entities from which

16  data was stolen, as well as the type of data stolen from each entity.  The government

17  expects to add an additional charge against Thompson based upon each such theft of data,

18  as the victims are identified and notified.

19       The government notes that Thompson has represented that she neither sold, nor

20  otherwise shared or disseminated any of the data that she stole (from Capital One or any

21  other victim), and that the copy of the data that the government recovered during the

22  search of Thompson's residence is the only copy of the stolen data that she created.  It is

23  too early to confirm that this is the case.  The government is continuing its investigation,

24  which will take a significant amount of time and resources, given the immense amount of

25  forensic evidence to review.  To date, however, the government has not uncovered any

26  evidence that would suggest Thompson's statement that she neither sold, nor otherwise

27  disseminated, any of the data beyond the servers that the government recovered is untrue.

28

MEMORANDUM IN SUPPORT OF DETENTION - 6
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 3.  Other Evidence Recovered from Thompson's Residence.

Although Thompson's residence originally was searched pursuant to a warrant seeking evidence of Thompson's cybercrimes, during the course of searching the residence, agents found additional evidence relevant to the issue of Thompson's detention.  Specifically, within the bedroom of Thompson's roommate, Park Quan, agents observed what can fairly be described as an arsenal of weapons, ammunition, and explosive material, largely unsecured and accessible to his housemates, including Thompson.  Because Quan is a convicted felon, and not allowed to possess firearms, agents obtained a follow-on search warrant to seize firearms and related items.

Pursuant to that warrant, agents seized 14 firearms, including assault rifles, a sniper rifle, and hand guns.  Some of the guns were loaded, including one with a high-capacity magazine.  At least one appears to be short-barreled.  Also recovered were two bump stocks, which are designed to be attached to semiautomatic firearms in place of conventional stocks, enabling them to fire bullets more rapidly, mimicking a fully-automatic weapon, two 37 mm "flare launchers," which can be used to shoot a variety of projectiles, and multiple high-capacity magazines.  The fact that all of these weapons were recovered in the bedroom adjacent to Thompson, most of them readily accessible to her, is obviously of concern, given Thompson's recurrent threats to commit violence against herself and others.

## III.   DISCUSSION

Thompson poses both a significant danger to the community and a risk of nonappearance.  Pretrial Services has indicated that it will recommend detention for Thompson.  The government agrees Thompson should be detained.

### A. The Legal Standard

18 U.S.C. § 3142(f)(2)(A) provides that the court shall "hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of [a defendant] and the safety of any other person and the community" upon motion of the government in any "case that involves . . . a serious risk that such

1   person will flee." If Thompson were released, there is a serious risk that she would fail to

2   appear for future proceedings, both because she might flee, and because she might follow

3   through on her repeated threats to harm herself (particularly now that she is facing

4   criminal prosecution and a substantial term of imprisonment).

5       At a detention hearing, 18 U.S.C. § 3142(g) provides that the court

6         shall . . . take into account

7           (1)  the nature and circumstances of the offense charged;
        (2)  the weight of the evidence against the person;

8           (3)  the history and characteristics of the person . . . and

9           (4)  the nature and seriousness of the danger to any person or the
            community that would be posed by the person's release . . . .

10

11   **B.  Thompson Should be Detained as a Danger**

12       Each and every one of § 3142(g) factors counsels strongly for detention in

13   Thompson's case.  First, the nature and circumstances of the offense with which

14   Thompson is charged are tremendously serious.  Thompson is charged with committing

15   one of the largest cyber intrusions and data thefts in history.  (Although the Equifax

16   breach reportedly involved the theft of personal information of approximately 143

17   million people, Thompson's intrusion dwarfs most other famous breaches.  For instance,

18   the Target breach involved personal information of only approximately 41 million

19   people.)  According to Capital One, Thompson's intrusion involved the theft of

20   information of approximately 106 million customers.  The threat or harm to those

21   individuals is massive.

22       And Capital One is only of the victims of Thompson's criminal conduct.  As noted

23   above, the evidence recovered from Thompson's residence suggests that Thompson

24   intruded into servers operated, rented, or contracted by over 30 companies, educational

25   institutions, and other entities.  Although not all of those intrusions involved the theft of

26   personal identifying information, it appears likely that a number of the intrusions did.

27       Moreover, even if it is true that the government recovered all of the stolen data,

28   the impact of Thompson's crime will be immense.  Capital One alone already has been

MEMORANDUM IN SUPPORT OF DETENTION - 8
*United States v. Paige A. Thompson*, No. MJ19-0344

1  sued in 48 separate cases, has estimated that it will incur $100 to $150 million of

2  additional costs in 2019, and presumably will incur even higher costs before the

3  consequences of Thompson's actions are fully resolved.  Presumably, many of the other

4  victims of Thompson's intrusions and thefts also will incur substantial costs.

5      Second, the weight of the evidence is overwhelming.  Thompson openly boasted

6  about her exploits on various social media forums.



> Ive basically strapped myself with a bomb vest, fucking dropping capitol ones dox and admitting it
>
> I wanna distribute those buckets i think first
>
> Jun 18, 2019, 12:04 AM
>
> There ssns...with full name and dob
>
> Jun 18, 2019, 12:06 AM

Data that Thompson stole from Capital One, and other victims, was recovered from a

server in Thompson's bedroom.  And, in a post-arrest statement, Thompson admitted to

the data intrusion and theft of data from entities, including Capital One.

    Third, Thompson's history and characteristics further weigh in favor of detention.

Thompson has a long history of threats to kill others, to kill herself, and to commit

suicide by cop.  The threats are serious enough that they have resulted in multiple calls to

law enforcement and restraining orders.  The threats likely are related to, and intertwined

with, what appears to be a significant history of mental health problems.  In addition,

Thompson lacks both a residence to which she could be released and employment to

provide her structure and stability.

    Finally, Thompson's release would pose an extremely serious danger to the

community.  It would pose such a danger on multiple levels.  First, Thompson would

pose a danger of violence.  After repeated threats to kill others or herself, or to commit

suicide by cop, Thompson clearly poses a physical danger.  In today's America, it is easy

enough to obtain firearms, and there is every reason to be concerned that Thompson, who

MEMORANDUM IN SUPPORT OF DETENTION - 9
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

repeatedly has threatened to kill, would obtain the means to carry out, and carry out, her threats – particularly when confronted with the alternative of near-certain conviction and imprisonment.

Second, Thompson would pose a technological danger.  Thompson's conduct already almost certainly has caused hundreds of millions of dollars of damage.  If Thompson were released, if she does in fact have another copy of the stolen data, Thompson could sell or disseminate it.  And, even if she does not have another copy, Thompson's technical sophistication means that she could commit additional cyber intrusions, thereby likely causing additional hundreds of millions of dollars of damage. Both risks are of particular concern given Thompson's instability.  Regardless of what Thompson might promise the Court, she previously has threatened to disseminate stolen data containing tens of millions of people's personal identifying information.  *See, e.g.,* Twitter Post on page 9 (threatening to "distribute [Capital One's] buckets").  There are no reasonable assurances that she would not follow through on such a threat in the future.

The government presumes that Thompson's counsel will argue that, if released, Thompson would be under appropriate mental-health care, thereby mitigating the risk of releasing Thompson.  But, Thompson's mental-health conditions are long-standing and well-known to Thompson.  And Thompson made the threats and committed the crimes that counsel against her release, even while apparently receiving mental-health treatment. There is no reason to believe that any mental-health treatment that Thompson might receive while on release would be any more effective in reducing the danger that Thompson would pose than her prior treatment.

Simply put, if Thompson is released, there is every reason to believe that Thompson would resort to threats, violence, or cybercrime.  And, if Thompson were inclined to resort to violence, or to conduct future cyber intrusions, no condition or combination of conditions could adequately prevent her from doing so.

MEMORANDUM IN SUPPORT OF DETENTION - 10
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## C.  Risk of Flight

In addition to being a danger, Thompson also poses a risk of nonappearance.  She has a history of mental-health issues and of severely erratic and bizarre (and often violent) behavior, despite her participation in treatment programs.  Thompson can offer no sound rationale why she would fair differently under court-imposed conditions. Indeed, Thompson now faces very serious charges, overwhelming evidence, and a significant sentence.  The immense added stress caused by her current circumstances presumably will only serve to intensify the unpredictability of her future actions.

Moreover, the risk that Thompson would flee, or otherwise fail to appear, cannot be adequately addressed by court-imposed conditions of release.  As courts repeatedly have recognized, electronic monitoring has many uses, but it does not prevent flight.  *See, e.g., United States v. Townsend*, 897 F.2d 989, 994-95 (9th Cir. 1990) ("Nor does the wearing of an electronic device offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction.")  And there is no way of ensuring that Thompson, who repeatedly has threatened to kill herself (including, tangentially, at her initial appearance), and who so far has offered no solution to address her recent history of such threats, would not, in fact, harm herself.

Like danger to others and the community, these concerns of nonappearance are further aggravated by Thompson's lack of employment and stable residence.  Put simply, Thompson's risk of nonappearance further counsels for detention.

//

//

//

MEMORANDUM IN SUPPORT OF DETENTION - 11
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# IV.   CONCLUSION

In short, every one of the § 3142(g) factors weighs heavily in favor of detention. No conditions that the Court can impose adequately could protect the community or ensure Thompson's appearance at future proceedings.  As a result, the Court should order Thompson detained.

DATED this 13th day of August, 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*// s // Andrew C. Friedman*
*// s // Steven T. Masada*

_____

ANDREW C. FRIEDMAN
STEVEN T. MASADA
Assistant United States Attorneys

United States Attorney's Office,
700 Stewart Street, Suite 5220
Seattle, Washington  98101-1271
Telephone:    (206) 553-7970
Facsimile:    (206) 553-0882
E-mail:        Andrew.Friedman@usdoj.gov
                  Steven.Masada@usdoj.gov

MEMORANDUM IN SUPPORT OF DETENTION - 12
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

CERTIFICATE OF SERVICE

2

3          I hereby certify that on August 13, 2019, I electronically filed the foregoing with

4   the Clerk of Court using the CM/ECF system which will send notification of such filing

5   to the attorney of record for the defendant.

6

7                                      *// s //  Andrew C. Friedman*
8                                      ANDREW C. FRIEDMAN
                                       Assistant United States Attorney
9
                                       United States Attorney's Office
10                                     700 Stewart, Suite 5220
11                                     Seattle, Washington  98101-1271
                                       Telephone:    (206) 553-2277
12                                     Facsimile:    (206) 553-0882
13                                     E-mail:       Andrew.Friedman@usdoj.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF DETENTION - 13
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970