UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAIGE A. THOMPSON,<br><br>Defendant. | NO. MJ19-0344<br><br>**UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION** |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Andrew C. Friedman and Steven T. Masada, Assistant United States Attorneys for said District, files this reply memorandum in support of its motion to detain Defendant Paige A. Thompson. The detention hearing currently is scheduled for August 23, 2019.

## I. INTRODUCTION

On August 20, 2019, Defendant, Paige Thompson, filed a response memorandum advocating for pretrial release. Thompson's memorandum argues that the government has failed to establish that Thompson is a risk of flight, and argues that this Court may not detain Thompson as a danger to the community. Thompson is incorrect in both regards. As the United States Probation and Pretrial Services Office's ("Pretrial Service") report recognizes, no condition or combination of conditions will reasonably ensure Thompson's

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 1
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

appearance at future proceedings, or protect the community. As a result, this Court should follow Pretrial Service's recommendation and order that Thompson be detained.

## II. DISCUSSION

### A. Legal Standard

The parties agree that, in order for Thompson to be eligible for detention, the case must be one that is eligible for a detention hearing under 18 U.S.C. § 3142(f). That section provides that a court shall hold a detention hearing in cases that involve five categories of offenses listed in § 3142(f)(1), or in two further categories of cases, namely, cases that involve "a serious risk [the defendant] will flee" or "a serious risk [the defendant] will obstruct or attempt to obstruct justice," listed in § 3142(f)(2).

It appears that the parties further agree that, if a case qualifies for a detention hearing, a court should consider the factors set forth in 18 U.S.C. § 3142(g), and that the court should detain a defendant if it finds that "no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1).

The parties disagree, however, as to the application of this framework to Thompson's case. Thompson argues that the government has failed to show that Thompson is a serious risk of flight. Thompson also argues that the Court may not consider the evidence that Thompson would pose a danger to others and to the community in determining whether to detain Thompson (and whether her release would pose a danger to others and the community). Thompson is wrong in all these respects.

### B. Thompson is a Serious Risk of Flight

As set forth both in Pretrial Service's report, and in the government's original motion and memorandum, Thompson is a risk of flight, for multiple reasons. Thompson

- has no stable residence;[1]

---

[1] Although Thompson's memorandum includes a letter from one of Thompson's housemates saying that Thompson could return to her residence, Thompson's housemates previously told Pretrial Services, in connection with her former roommate Park Quan's case, that this was not the case. Further, because her housemates are potential witnesses in her cases, her prior residence is not a viable alternative.

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 2
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- has no present employment, and has been unemployed since 2016;

- has a long history of drug abuse dating from her adolescence until at least 2017, involving numerous drugs, including cocaine, methamphetamine, PCP, mushrooms, acid, research chemicals, and other drugs, as well as alcohol;

- has a lack of local familial connections;

- has a long history of serious mental-health issues that repeatedly have manifested themselves in erratic behavior, notwithstanding the fact that Thompson has been receiving mental-health counseling and has been prescribed medications; and

- is now facing near-certain conviction and a lengthy sentence. Indeed, even limiting the loss amount in Thompson's case to the low-end $100 million that Capital One (which is just one of Thompson's victims) already has set aside to cover costs during just the next five months, the government believes that Thompson is facing a likely sentencing range of *at least* 121-151 months, even after a guilty plea. Of course, Thompson's actual sentencing range likely will be significantly higher.

The government need only prove that a defendant is a serious risk of flight by a preponderance of the evidence. *See United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985), rather than by the higher clear-and-convincing standard applicable to dangerousness determinations. The factors listed above meet this standard. Together, they establish that Thompson lacks stability and ties to the community that would help ensure her appearance. In addition, Thompson's history of mental-health issues and erratic behavior greatly exacerbate the risk that Thompson would flee. *See United States v. Boykins*, 2012 WL 3638659, at *3 (N.D. Cal. Aug. 22, 2012) ("Given his unemployment, his lack of a home or sureties, his previous probation or parole violations, and his mental health problems, Defendant presents an unmitigable risk of flight."). And the substantial sentence that Thompson faces gives her a strong incentive to flee, whether as a calculated act or as the result of impulsive and erratic behavior. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). As a result, the Court should find Thompson clearly presents a serious risk of flight.

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 3
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

This conclusion is further supported by Thompson's history of suicide attempts and threats. As one court recently held,

> 18 U.S.C. § 3142(f)(2)(A) . . . authorizes a detention hearing . . . "in a case that involves . . . a serious risk that [defendant] will flee". Although defendant argues that "risk of suicide is not risk of flight" . . . , I disagree. *See United States v. Cody*, 498 F.3d 582, 592 (6th Cir. 2007) ("suicide is a form of flight"); *Tug Raven v. Trexler*, 419 F.2d 536, 543 (4th Cir. 1969)

*United States v. Metz*, 2012 WL 6632501, at *4 (W.D.N.Y. Dec. 12, 2012); *see also United States v. Workman*, 680 Fed. App'x 699, 702 (10th Cir. 2017) (approving consideration of defendant's suicidal ideation and previous suicide attempts in finding that defendant was a risk of nonappearance); *United States v. George-Rodriguez*, 2013 WL 3246114, at *6 (D. Utah June 26, 2013) ( "[E]ven if it is inappropriate for the Court to consider suicidal ideation in its dangerousness determination, it is certainly permissible for the Court to consider that fact in determining Defendant's risk of non-appearance.") *United States v. Avery*, 2012 WL 5869296, at *3 (N.D. Cal. Nov. 6, 2012) (finding both dangers to the community and serious risk of flight in support of detention, and noting, among the factors "[o]f greatest concern" to the court, untreated mental-health issues and "concerns about self-harm and self-destructive behavior").

According to the Pretrial Services report, Thompson previously has attempted suicide on two occasions in 2013 and 2016. In addition, as noted in the government's initial filing Thompson recently has threatened to commit "suicide by cop," and has made social media posts that suggest that she was ready to die. Thompson also expressed a desire to die at her initial appearance in this case. Thompson's history of suicide attempts, threats, and ideation all confirm that Thompson should be considered a serious risk of flight. Although the Bureau of Prisons ("BOP"), which initially placed Thompson on a suicide watch, since has removed Thompson from that watch based on subsequent observations of Thompson, Thompson's continued incarceration, which will allow for close monitoring of Thompson's condition and the reimposition of a suicide watch if appropriate, is the best way to ensure that Thompson does not, in fact, harm herself.

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 4
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The evidence establishes that Thompson is a risk of flight, for which no conditions can adequately ensure her appearance.[2] She should be detain on that basis alone.

**C.     The Court Can and Should Consider Danger to Others and the Community**

Thompson argues that the Court is limited in making its detention decision to considering whether Thompson is a flight risk, and that the Court cannot consider whether Thompson presents a danger to the community. *See* Defendant's Resp. at 10 ("It Is Illegal to Detain Ms. Thompson as a Danger to the Community" and "By its text, § 3142(f) does not authorize detention on generalized dangerousness grounds").

Thompson's argument is inconsistent with the plain language of the Bail Reform Act. Indeed, 18 U.S.C. § 3142(f) provides that a judge who conducts a detention hearing shall "determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required *and the safety of any other person and the community*." 18 U.S.C. § 3142(f) (emphasis added). Thus, this section clearly requires that a judge who conducts a detention hearing – whether because a case involves an enumerated type of dangerous crime, or a risk of flight or obstruction – consider both nonappearance and dangerousness. If Congress intended the outcome Thompson seeks, it would have used language to that effect in the statute. It did not do so.

And 18 U.S.C. § 3142(e) provides that, if, following a detention hearing, a judge "finds that no condition or combination of conditions will reasonably assure the

---

[2] Thompson faults the government for stating that courts have repeatedly recognized the severe deficiencies of location monitoring in preventing flight, but offering only one citation (albet as "*see, e.g.*"). Courts repeatedly have done so. *See, e.g., Townsend*, 897 F.2d 989, 994-95 ("Nor does the wearing of an electronic device offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction."); *United States v. Menaged*, 2017 WL 2556828, at *4 (D. Ariz. June 13, 2017) ("If Defendant intended to flee, the GPS device could easily be removed. The device would not prevent Defendant from traveling to another country. A GPS device would not prevent him from fleeing, and thus does not ameliorate his risk of flight."); *United States v. Patel*, 2017 WL 1098822, at *2 (E.D. Wash. Mar. 23, 2017) ("The Court further finds electronic home monitoring and GPS monitoring to be ineffective tools regarding the concern of flight, particularly foreign flight. When a monitoring device is removed or cut (which is what occurs when individuals flee), the Probation Officer receives an alert. However, there is no ability for the Probation Office to locate an individual and prevent them from departing the District or the country. These devices are more effective in addressing concerns related to safety of the community or other non-compliance.").

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 5
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

appearance of the person as required *and the safety of any other person and the community*, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1) (emphasis added). Thus, this section similarly contemplates that a judge who conducts a detention hearing – whether because a case involves an enumerated type of dangerous crime, or a risk of flight or obstruction – consider both nonappearance and dangerousness. *See also* 18 U.S.C. § 3142(g) (providing that, "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," a judge take into account "the nature and seriousness of the danger to any person or the community that would be posed by the person's release").

Thompson's interpretation is also contradicted by the Act's legislative history. One purpose of the Bail Reform Act of 1984 was to allow courts to weigh an additional factor when considering bail, namely, the danger to the community posed by the release of defendants. *See Motamedi*, 767 F.2d at 1406 ("Danger to another or to the community is a statutory addition that constitutes a significant departure from the previous law."). The legislative history of the Act expressly contemplates dangerousness as an independent and equally viable ground to detain a charged defendant:

> As discussed above, the Committee has determined that danger to the community is as valid a consideration in the pretrial release decision as is the presently permitted consideration of risk of flight. Thus, subsection (a), like the other provisions of section 3142, *places the consideration of defendant dangerousness on an equal footing with the consideration of appearance*.

Report of the Committee on the Judiciary, United States Senate on S. 215, Rept. No. 96–147, at 39 (May 25, 1983) (emphasis added).

As accurately explained by one court,

> The result that a defendant may be detained as a danger to the community or others even where the hearing is brought based on (f)(2), does not expand the [Bail Reform] Act's scope. Rather, it coincides with Congress' intent (discussed earlier) in amending the statute so that dangerousness can be considered in appropriate

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 6
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> cases. . . . It is axiomatic that a court is obliged to follow controlling statutory language and give it full effect. That can only be done in these circumstances if the Court engages in the dangerousness analysis required by the Act.

*United States v. Holmes,* 438 F. Supp. 2d, 1340, 1351 (S.D. Fla. 2005); *accord United States v. Kouyoumdjian*, 601 F. Supp. 1506, 1509-10 (C.D. Cal. 1985).

The principle that the court can consider factors other than the specific factors that warrant a detention hearing in determining detention also draws support from myriad cases, including Ninth Circuit cases, doing exactly that. For instance, the categories of cases for which detention hearing is authorized under 18 U.S.C. § 3142(f)(1) do not include economic crime cases, yet the Ninth Circuit has held that courts may consider economic harm in making detention decisions. *See United States v. Reynolds,* 956 F.2d 192, 192 (9th Cir. 1992) ("[w]e further hold that danger may, at least in some cases, encompass pecuniary or economic harm"). Likewise, courts obviously can detain defendants as risks of flight even when the basis for the hearing was under § 3142(f)(1).

Among the cases Thompson cites are *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992), *United States v. Singleton*, 182 F.3d 7 (D.C. Cir. 1999), and *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003). Although these cases contain language suggesting courts cannot detain defendants based on danger alone, these cases involve situations where a defendant was not eligible for a detention hearing under § 3142(f). As a result, they do not limit what information a court can consider in a case in which there is a basis for a detention hearing, such as Thompson's case.

In short, Thompson's argument that this Court's authority to order detention is restricted to the seven factors listed in 18 U.S.C § 3142(f) would render meaningless the other statutory language, including § 3142(e) and (g) as well as the provision Thompson relies upon, § 3142(f) itself (directing courts to hold a hearing to determine whether any conditions reasonably assure the appearance of such person as required and the safety of

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 7
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

any other person and the community). This Court can and should consider the danger that Thompson would pose, if released, in deciding whether to detain Thompson.[3]

**D.  While Not Required, Defendant's Danger Relates to Charged Conduct**

Thompson argues that any consideration of danger must be limited to danger related to the charged crime. This is not the proper legal standard. In fact, this District has an established practice of considering the totality of the risk factors presented, and it is simply illogical to ignore material information plainly pertinent to the detention analysis.

Moreover, this proposition also conflicts with the majority of other courts and has not been adopted by the Ninth Circuit. As one district court within this Circuit noted,

> In light of this directive to consider a defendant's character and past conduct in determining whether his or her pretrial release poses a danger to the community, it is not surprising that courts have repeatedly recognized that the past conduct of the defendant, even if wholly unrelated to the crime of violence then charged, should be considered along with other factors in making that determination.

*United States v. Hammet*, 2013 WL 1192779, at *2 (E.D. Cal. Mar. 22, 2013). As other courts have similarly reasoned,

> Nor is the dangerousness of a defendant determined solely by looking at the acts charged in the indictment. There is no requirement of a nexus between the charged conduct and the basis of a court's conclusion that a defendant is a serious danger to the community. This Court therefore may look beyond the charged conduct to assess the degree of danger that the defendant poses.

*United States v. Bellomo*, 944 F. Supp. 1160, 1166 (S.D.N.Y. 1996) (citations omitted). Many more have reached the same, commonsense conclusion. *See United States v. Defede*, 7 F. Supp. 2d 390, 395 (S.D.N.Y. 1998) ("In considering the adequacy of

---

[3] Thompson also claims that detention constitutes a Fifth Amendment due process violation, but fails to articulate a detailed argument. Nor could she. Both the Ninth and Supreme Court have rejected this Fifth Amendment claim. *See United States v. Salerno*, 481 U.S. 739, 746-47 (1987) ("The legislative history of the Bail Reform Act clearly indicates that Congress did not formulate the pretrial detention provisions as punishment for dangerous individuals."); *United States v. Walker*, 808 F.2d 1309, 1311 (9th Cir. 1986). Notably, in *Walker*, the Ninth Circuit confirmed the constitutionality of pretrial detention, which had been based upon a finding of dangerousness alone.

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 8
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conditions to safeguard the public, it is important to recognize that the threat inherent in Defede's continued liberty need not stem directly from the threat of violent acts by him. *Nor need it arise from the charged offenses*." (emphasis added)); *United States v. Choudhry*, 941 F. Supp. 2d 347, 350 (E.D.N.Y. 2013) ("In addition, the Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release."); *United States v. Bruno*, 89 F. Supp. 3d 425, 430 (E.D.N.Y. 2015) ("Further, the Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release.").

The Second Circuit flatly rejected the proposition Thompson advances, finding that the "district court erred as a matter of law" by rejecting information offered by the government memorandum and limiting its dangerousness analysis to the charged offense:

> The district court stated that "[t]he question of danger to the community arises primarily out of what the production was in which the defendants engaged in connection with the narcotics transaction." We have never required such a nexus, nor do we impose such a requirement today. The issue is whether a defendant poses a danger to the community. Shooting a man in the kneecap over a small debt is probative of dangerousness, regardless of whether the incident was related to drug trafficking.

*United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991). The Court should not follow Thompson's invitation to apply new (wrong) law to this District.

Regardless, Thompson's dangerousness directly relates to the criminal conduct at issue. Thompson, the evidence shows, holds ill feelings toward her former employer, the "Cloud Computing Company" identified in the Complaint. As noted by the officer responding to the May 23, 2019, incident where Thompson threatened to shoot up a social media company, the officer's familiarity with Thompson arose from prior suicide-by-cop threats and "threats via social media to [the Cloud Computing Company] on her twitter account."[4] And, Thompson targeted her former employer with cyber-attacks in this case.

---

[4] The name of Cloud Computing Company was redacted on Exhibit 7.

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 9
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The Cloud Computing Company is a victim and a material witness in this case. Accordingly, the dangerousness relates directly to the charged conduct in this case.

**E.    Considering Dangerousness Confirms Thompson Should Be Detained**

As explained in Part B, *supra*, Thompson is a serious risk of flight and she should be detained on that basis. Thompson also is a danger to others and the community for the reasons set forth in the government's original memorandum. Viewing the factors in combination, as the Court must, detention is warranted because no conditions adequately address *either* Thompson's risk of nonappearance *or* the danger posed to others.

Thompson attempts to mitigate the circumstances by addressing each area of concern separately. The government addresses some of Thompson's arguments below. However, the detention determination for this Court is not a piecemeal analysis but rather consideration of the totality of the circumstances presented by Thompson. Thompson points to no other released defendant in this District, or elsewhere, that poses the same risk profile when the factors are viewed collectively. Nor could she.

*1.  Defendant's Efforts to Downplay Risk of Violence*

Thompson argues that she is not a danger to others. She, however, makes little effort to address threats she will engage in a mass shooting, other than to argue that she did not follow through with such an atrocity. That reasoning is unsound, particularly given that, unbeknownst to officers at the time, Thompson did in fact have access to firearms and ammunition through her housemate Park. Further, Thompson is simply wrong when she claims police did not consider her a danger at the time. As set forth in the police report (Exhibit 7), officers contacted Thompson's mental health provider and made arrangements for "further outreach and assessment." Similarly, the May 24, 2019 police response (Exhibit 6) concluded with Thompson being transported to a medical facility.

In addition to threatening to shoot police and others, Thompson has repeatedly indicated a desire to commit suicide-by-cop. Coupled with the police attention Thompson has demanded, this risk factor cannot be understated. Such scenarios poses a significant

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 10
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

risk to not only herself but also law enforcement and bystanders. *See, e.g., Zamora v. City of Bonney Lake*, 2012 WL 2326028 (W.D. Wash. June 19, 2012) (involving injuries caused to a family member by officers responding to an attempted suicide-by-cop incident). Beyond the immediate risk of harm, the threats posed by suicide-by-cop cases create difficult situations for responders that have downstream effects on public safety.[5]

### 2. *Defendant's Efforts to Downplay Technological and Economic Risk*

Thompson argues that authorities' seizure of her custom-built computer forecloses the technological risk she poses. *See* Defendant's Resp. at 15. Notwithstanding the fact that Thompson has the sophistication to construct a super computer, her claim is simply not true. A highly-sophisticated machine with special software is not required to commit hacking activity, nor was it required to commit the data breaches that Thompson is alleged to have committed.

Significantly, the Federal Detention Center recently sanctioned Thompson to limit her computer usage, because she apparently was exploring and analyzing the inmate TRULINC system and considering ways to exceed the access she is permitted. Thompson conveyed information and potential vulnerabilities of the system to an associate via email. For instance, after describing the system, she wrote:

> There's prob some way I could get a file:///C somewhere perhaps in contacts and it might automatically expand to a link that can be clicked somewhere that would give you could use to start a windows explorer shell but I haven't tried :D They also trap all keyboard signals in this app. I'm also pretty sure these computers are running [redacted], so there might even be a way to get a cmd.exe so from safe mode/winrm. I doubt there are any BIOS lockouts, nobody ever puts that much effort into anything.

Exhibit 8 (filed under seal). Whether or not Thompson intended to pursue this course, her conduct conclusively demonstrates that the significant risk presented by her sophistication and technological prowess is not reliant on special equipment or software.

---

[5] *See, e.g.,* https://www.latimes.com/california/story/2019-08-09/suicide-calls-california-cops-stopped-responding.

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 11
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Moreover, Thompson cites Amazon's August 13, 2019 letter to Congress, in which the company stated that, as of that date, it was unaware of any breaches at other "noteworthy" customers or significant issues. *See* Defendant's Resp. at 12. This acknowledgment undermines Thompson's own argument. Amazon's and its corporate customers' inability to fully identify the method of unauthorized access and unwind Thompson's sophisticated breaches or confirm the extent of stolen data further demonstrates the immense risk she poses to others and the community if released.

### 3. *Defendant's Efforts to Downplay Harm and Seriousness of Crime*

Thompson further suggests that her alleged conduct might not have had a serious impact on Capital One. While it is true that a variety of factors affect markets and share prices, Thompson's claim is patently absurd.[6] As publicly reported, the stock price tumbled 5.4%, compared to the S&P 500 (down 0.5%), when markets opened following the company's announcement of the data breach.

To diminish the visual impact of the drastic stock drop and promote a false impression of her actual impact, the defense memorandum included a chart that incorporated an odd date range, dating back to early July (July 8) when Capital One's share price was significantly lower --- i.e., not July 29, 2019, when the news broke and comparison would be relevant. Notably, Capital One stock rose sharply (over 7%) between July 8 and the close on Friday, July 26, outperforming the major indices *by roughly 5%* during that period. Thus, Thompson's selected date range artificially diminishes the market impact and visually understated the alleged comparison. To correct the record, below is an accurate chart comparing Capital One stock (COF) to the major market indexes (Dow Jones, Nasdaq, and S&P 500), from July 29, 2019 to present.

---

[6] *See, e.g., Capital One Stock Is Falling Because Its Data Breach Could Cost More Than $100 Million*, Barron's (July 30, 2019), available at https://www.barrons.com/articles/capital-one-stock-data-breach-hacker-credit-card-applications-amazon-cloud-51564492172.

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 12
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



Regardless of any stock price analysis, the undisputed loss just to Capital One, $100 to $150 million for the remainder of 2019, is enormous. That amount alone establishes the significance and severity of Thompson's conduct. The full damage caused to Capital One and the more than 30 additional breach victims remains unknown, but almost certainly is far greater.

As noted, no conditions could prevent Thompson, if released, from engaging in additional breaches or hacking activity. Nor could they prevent her from accessing, utilizing, or disseminating any stolen data, including consumers' personal information, she may have stored elsewhere. Courts recognized that danger to the community may encompass financial harm. *See Reynolds*, 956 F.2d at 192 ("We further hold that danger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Parr*, 399 F. Supp. 883, 888 (W.D. Tex. 1975)); *United States v. Gentry*, 455 F.Supp.2d 1018, 1032 (D. Ariz. 2006) ("[d]anger ... may be recognized in terms other than the use of force or violence[ ]" but ultimately concluding that possibility of defendant perpetrating further economic crimes weighed neither in favor of release or detention); *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) ("A defendants' propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within contemplation of the [Bail Reform Act].").

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 13
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## F. Thompson's Treatment at FDC-SeaTac

A substantial portion of Thompson's brief addresses issues that are not strictly relevant to the factors that the Court must consider to decide whether Thompson poses a risk of flight and a danger to the community, and therefore should be detained pending trial. Much of this has to do with the conditions of Thompson's confinement at the Federal Detention Center – SeaTac ("FDC"), and, particularly, with the impact of the fact that Thompson is transgender, and is being housed in the male unit at FDC.

To ensure that the record is complete, the government notes that FDC has been treating Thompson consistent with the terms of the BOP's Transgender Offender Manual (Program Statement 5200.04) (Jan. 18, 2017; updated May 11, 2018). That manual is designed to ensure that BOP properly identifies and provides services to the transgender population, consistent with maintaining security and good order in federal prisons.

The manual provides that, in making housing designations, BOP's Transgender Executive Council ("TEC") should consider factors including inmates' gender expression, medical and mental health needs, vulnerability to victimization, and likelihood of abusing others. It provides that the TEC should use biological sex as the initial determination for designation. It also provides, however, that designation to a facility of the inmate's identified gender may be appropriate in rare cases, after considering factors including the health and safety of the transgender inmate and whether such placement would threaten the security of the institution or pose a risk to other inmates, where there has been significant progress towards transition as demonstrated by medical and mental health history.

In Thompson's case, BOP, and the TEC, are closely monitoring Thompson's situation. BOP is providing Thompson medications that she takes due to her transgender status. BOP has housed Thompson in a male unit, but has taken the unusual step of placing Thompson in a cell with her former housemate, Park Quan, with whom Thompson has expressed a preference for sharing a cell. And BOP is ensuring that staff psychologists regularly meet with Thompson and monitor Thompson's condition.

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 14
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Thus, BOP staff psychologists have met with Thompson on multiple occasions
between the date of her initial July 29, 2019, incarceration and August 20, 2019.
Thompson consistently has reported to them that she has not been harassed or threatened.
Thompson has not reported any current safety concerns (but during a visit yesterday did
express general concerns about her safety in a male housing unit).  The staff psychologists
report that Thompson appears to be adjusting well to her incarceration.  In particular,
Thompson is denying any ongoing suicidal ideation and has been taken off suicide watch,
although such watch obviously could be quickly re instituted should Thompson's
condition change or Thompson report renewed suicidal ideation.

   Furthermore, the alternative housing proposed by Thompson does not negate the
concerns she expresses about gender identity --- for instance, the transient nature of the
population and risk of harassment or abuse.  Such remains true at a halfway house.  While
custody might not be her preference, placement in a halfway house poses similar exposure
to a transient population and possible harassment, but without the oversight and trained
professionals to intervene as needed.

### III.  CONCLUSION

   For the reasons set forth in the government's original memorandum, and those set
forth above, this Court should order that Thompson be detained.

   DATED this 22nd day of August, 2019.

>   Respectfully submitted,
>
>   BRIAN T. MORAN
>   United States Attorney
>
>   // s // Andrew C. Friedman
>   // s // Steven T. Masada
>
>   ANDREW C. FRIEDMAN
>   STEVEN T. MASADA
>   Assistant United States Attorneys
>   United States Attorney's Office,
>   700 Stewart Street, Suite 5220
>   Seattle, Washington  98101-1271

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 15
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the defendant. A copy of the foregoing will be sent to the attorneys of record, Christopher Sanders and Mohammad Ali Hamoudi.

/s/ *Elizabeth Gan*
ELIZABETH GAN
Legal Assistant
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7970
Facsimile: (206) 553-0882

REPLY MEMORANDUM IN SUPPORT OF DETENTION - 16
*United States v. Paige A. Thompson*, No. MJ19-0344

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970